**2014 UT App 285**

## THE UTAH COURT OF APPEALS

DANIEL JAMES SHEERAN,
Plaintiff and Appellee,
*v.*
PAUL THOMAS,
Defendant and Appellant.

Memorandum Decision
No. 20131083-CA
Filed December 11, 2014

Seventh District Court, Monticello Department
The Honorable Lyle R. Anderson
No. 130700022

Elizabeth Hunt, Attorney for Appellant

Daniel James Sheeran, Appellee Pro Se

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES JAMES Z. DAVIS and KATE A. TOOMEY
concurred.

ORME, Judge:

¶1    Paul Thomas appeals from a civil stalking injunction entered against him. We affirm the injunction, with two important clarifications.

¶2    Daniel James Sheeran, who petitioned for the civil stalking injunction against Thomas, had worked for several years with Thomas's girlfriend. Thomas thought that Sheeran was harassing and annoying his girlfriend at work and made efforts to stop what he perceived to be unacceptable behavior. These efforts included filing complaints with the company, contacting a lawyer, and

directly confronting Sheeran. Sheeran testified that Thomas made him feel unsafe on three occasions.[1]

¶3    The first encounter occurred in mid-September 2013. Thomas and his girlfriend drove to her workplace and parked next to Sheeran's truck. Thomas got out of his truck and walked toward a gate where Sheeran was standing. Sheeran testified that he retreated to where another person was standing. As Sheeran explained, "When [Thomas] got to the gate, I think he saw the [other person], turned around and walked back." Before driving out of the parking lot, Thomas honked his horn several times.

¶4    The second encounter occurred on September 23, 2013. According to a police report, Thomas was driving his truck when he saw Sheeran parked on the opposite side of the road. Thomas turned his car around, intending to confront Sheeran. Sheeran saw Thomas turning around and tried to drive away to avoid a confrontation. Thomas, however, caught up with Sheeran, flipped him off, then maneuvered his truck in front of Sheeran's and blocked the road by parking at an angle. Thomas got out of his truck and yelled, "You fuckin messin with my family, man?" Sheeran drove off the road to get around Thomas's truck and sped away. At the evidentiary hearing convened at Thomas's request following entry of a temporary injunction, Sheeran asked Thomas if his intent was to harm him. Thomas responded,

> No, I wanted to scare the bejeezus out of you, and I did . . . . But I also drove away and let you drive

---

1. On appeal, when a trial court has made findings of fact to support a civil stalking injunction, we will recite the facts in a light most favorable to the trial court's findings. *See Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 2 n.1, 310 P.3d 747. We thus do not have occasion to outline the evidence offered by Thomas, which was mostly contrary to the findings made by the court. "[O]ur recitation of the facts also includes findings implicitly made by the trial court and matters that are undisputed in the record." *State v. Legg*, 2014 UT App 80, ¶ 2, 324 P.3d 656.

away at that point, too. If I had wanted to cause you harm, I could have.[2]

¶5 The third encounter occurred on September 25, 2013. Thomas tailed Sheeran and recorded video footage of Sheeran in an attempt to catch him doing something illegal or unethical. Thomas saw tires in the back of Sheeran's truck and thought he may have stolen them. The video is part of the record on appeal. In it, Thomas documents how Sheeran is using a cell phone while driving—by means of using his own cell phone while driving to make the video—and how Sheeran illegally passes a semi-truck on the highway. In his testimony, Sheeran explained that when he saw Thomas pull up behind him, he got out his cell phone and called 911. He also explained that he passed the semi-truck illegally only to get away from Thomas.

¶6 As a result of these incidents, Sheeran requested and received a temporary ex parte civil stalking injunction against Thomas. Thomas, in turn, requested an evidentiary hearing to dissolve the temporary injunction. After holding the requested hearing, the trial court determined that the "purpose" of the tailing and recording incident on September 25, 2013, was "not to intimidate, annoy or harass [Sheeran], but rather to make a record of what [Thomas] and his girlfriend viewed as suspicious activity." But the trial court also determined that, based on a preponderance of the evidence, Thomas had stalked Sheeran, first, by honking at Sheeran in the parking lot in mid-September and, second, by blocking the road and yelling at Sheeran on September 23, 2013.

¶7 Based on the first two encounters, the trial court issued what it termed a "permanent civil stalking injunction." In issuing the injunction, the trial court used a standard form, the last lines of which read:

---

2. The trial court noted in its ruling that Thomas "clearly wants petitioner to know that he is a former Army Ranger who is fully capable of harming petitioner as soon as he chooses to do so, and that petitioner's continued safety is entirely dependent on respondent's continued restraint."

> **No guns or firearms!** It is a federal crime for you to have, possess, transport, ship, or receive any firearm or ammunition, including hunting weapons, while this civil stalking injunction is in effect.

¶8      Thomas first asserts that the trial court's findings are insufficient to support the civil stalking injunction because they do not meet all the statutory requirements.[3] "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusions." *Bott v. Osburn*, 2011 UT App 139, ¶ 5, 257 P.3d 1022 (citation and internal quotation marks omitted). If a trial court's findings are inadequate to allow for meaningful review, a remand for additional findings may be appropriate. *See Towner v. Ridgway*, 2008 UT 23, ¶ 16, 182 P.3d 347, *superseded by statute on other grounds*, Utah Code Ann. § 76-5-106.5 (LexisNexis 2008), *as recognized in Bott*, 2011 UT App 139, ¶ 7. But even if the trial court did not explicitly make a necessary finding or reveal the evidence it relied on, we will not remand if "the evidence and statements contained in the record make the evidentiary basis for this finding sufficiently clear." *State v. Legg*, 2014 UT App 80, ¶ 21, 324 P.3d 656. And we will affirm the trial court's decision to grant the civil stalking injunction unless it is against the clear weight of the evidence or we reach a definite and firm conviction that there was a mistake. *See Kendall Ins., Inc. v. R & R Group, Inc.*, 2008 UT App 235, ¶ 9, 189 P.3d 114.

¶9      Under Utah law, stalking occurs when a person (1) "intentionally or knowingly engages in a course of conduct

---

3. It is not entirely clear from Thomas's brief if he is challenging the adequacy of the findings, the sufficiency of the evidence to support the findings, or both. Because we conclude that the findings are adequate for our review, we will primarily address this issue as a challenge to the sufficiency of the evidence. *See infra* ¶ 10. This approach is further justified by Thomas's failure to preserve the issue of the adequacy of the findings by alerting the trial court to any perceived deficiencies. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801; *In re K.F.*, 2009 UT 4, ¶ 4, 201 P.3d 985.

directed at a specific person" and (2) "knows or should know that the course of conduct would cause a reasonable person . . . to fear for the person's own safety or . . . to suffer other emotional distress." Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2012). "Course of conduct" is defined as

> two or more acts directed at or toward a specific person, including:
>
> (i) acts in which the actor follows, monitors, observes, photographs, surveils, threatens, or communicates to or about a person, or interferes with a person's property . . . or
>
> (ii) when the actor . . . approaches or confronts a person [or] . . . appears at the person's workplace or contacts the person's employer or coworkers . . . .

*Id*. § 76-5-106.5(1)(b).

¶10    In this case, we determine that the trial court's findings are adequate to allow for meaningful review of all the elements of stalking. In some respects, the trial court's findings are relatively sparse, but the evidence and statements in the record make the evidentiary basis for the ruling sufficiently clear. *See Legg*, 2014 UT App 80, ¶ 21.

¶11    First, we must determine whether there was sufficient evidence from which to conclude that Thomas had engaged in a "course of conduct" as defined by Utah Code section 76-5-106.5(1)(b), i.e., two or more acts directed at a specific person, namely Sheeran. In doing so, we "do not read the plain language of the Stalking Statute to require that each act or incident independently be such as to cause a reasonable person to fear for his or her safety; rather, it is the pattern of behavior or the course of conduct considered in the context of the circumstances that must have that cumulative effect." *Coombs v. Dietrich*, 2011 UT App 136, ¶ 13, 253 P.3d 1121. Indeed, the statute's illustrative list of acts that make up a course of conduct includes some activities which, taken

in isolation, can be rather innocuous, such as observing a person or communicating to or about a person. *See* Utah Code Ann. § 76-5-106.5(1)(b).

¶12    In this case, ample evidence in the record supports the trial court's conclusion that Thomas engaged in a course of conduct directed toward Sheeran. During the first encounter in mid-September, Thomas showed up at Sheeran's work, walked toward Sheeran, and honked his horn at Sheeran. Thomas provides alternative explanations for these actions, but the trial court, to whom we must defer on factual determinations and questions of credibility, determined that Thomas intentionally directed these actions toward Sheeran. The second encounter, in which Thomas blocked the road and yelled at Sheeran in an attempt to "scare the bejeezus" out of him, is another act intentionally directed at Sheeran. Finally, during the third encounter, Thomas followed and recorded Sheeran. While the trial court did not explicitly identify this event as an act within the overall course of conduct, we recognize that it is precisely the kind of behavior that the statute describes, i.e., "follow[ing], monitor[ing], observ[ing], photograph[ing]." *See id*. No one disputes that Thomas intended to do each of these actions. Accordingly, we conclude that the trial court was correct to find, based on ample evidence, that Thomas knowingly engaged in a course of conduct directed toward Sheeran.

¶13    Next, we consider whether there was sufficient evidence to determine that Thomas knew or should have known that his course of conduct would cause a "reasonable person . . . to fear for the person's own safety or . . . to suffer other emotional distress." *See id*. § 76-5-106.5(2). The trial court did not explicitly rule on whether the overall course of conduct was objectively frightening or emotionally disturbing, but it did make explicit findings about the individual acts within the overall course of conduct.

¶14    In regard to the first act, the trial court found that Thomas honked his horn at Sheeran "with a purpose of placing [Sheeran] in fear for his safety." The trial court also found that Thomas "flatly admits a purpose to place [Sheeran] in fear for his safety on

September 23, 2013." In regard to the third act—the instance of Thomas following and videotaping Sheeran—the trial court found that "to the disinterested observer" the behavior was "officious at best, and vindictive at worst." Based on these findings, we readily conclude that the overall effect of Thomas's course of conduct was to cause a reasonable person to fear for his safety.[4]

¶15     It is true that the trial court appears to have equated Sheeran with the "reasonable person" contemplated in the statute. *See id*. This, however, does not mean that the trial court has applied a subjective standard while the statute requires an objective one. Rather, it suggests—and plausibly so, in the context of this case—that the trial court considered Sheeran to be a reasonable person. And Sheeran was scared. In other words, Thomas's course of conduct would cause a reasonable person, Sheeran included, to fear for his safety. Accordingly, we do not conclude that the trial court's decision to grant the civil stalking injunction went against the clear weight of the evidence, nor are we convinced that the trial court made a mistake of law in granting the injunction.

¶16     Thomas argues that we should nevertheless vacate the civil stalking injunction because the trial court's ruling that accompanied the injunction referred to it as a "permanent civil stalking injunction." In general, civil stalking injunctions are not permanent but expire after three years. *See* Utah Code Ann. § 77-3a-101(9) (LexisNexis 2012). The trial court most likely used the word "permanent" to distinguish the civil stalking injunction from the temporary ex parte injunction that the court issued prior to the evidentiary hearing. Thomas suggests that the trial court should have used the phrase "long-term" to describe the civil stalking injunction instead of "permanent." But while this is a fine suggestion—and simply calling it a three-year injunction is an even better one—it is not a basis for vacating the injunction as Thomas requests. *See* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). We

---

4. We would reach the same conclusion even if we disregarded entirely the third episode, as the trial court essentially did.

also note that the terms of the order itself do not indicate that it is anything other than a standard three-year civil stalking injunction.

¶17    Finally, Thomas requests that we vacate the order because it incorrectly states that federal law prohibits Thomas from possessing a firearm. The trial court used a civil stalking injunction form approved by the Board of District Court Judges in June 2013. After the admonitory terms of the civil stalking injunction are set out, the order contains a final paragraph titled, "Warnings to the Respondent." One of these warnings states, "**No guns or firearms!** It is a federal crime for you to have . . . any firearm or ammunition . . . while this civil stalking injunction is in effect." This warning likely refers to United States Code title 18 section 922, which prohibits a person subject to a stalking injunction for the protection of an "intimate partner" from possessing a firearm. *See* 18 U.S.C. § 922(g)(8) (2012). In a situation such as the instant one, where Thomas and Sheeran are not now and never have been intimate partners, the federal restriction on firearm possession simply does not apply. *See Towner v. Ridgway*, 2012 UT App 35, ¶ 10, 272 P.3d 765. Indeed we note that the Board of District Court Judges updated the civil stalking injunction form on January 22, 2014, to read, with our emphasis, "It *may* be a federal crime for you to have . . . any firearm . . . ." *See* Civil Stalking Injunction, http://www.utcourts.gov/resources/forms/civilstalking/docs/CSI. pdf (last visited Nov. 24, 2014).

¶18    But the simple warning about federal law contained in the preprinted final paragraph of the civil stalking injunction does not create additional terms or requirements, nor is it a definitive statement of applicable law. It is only a warning, albeit one that may be wide of the mark in the circumstances of this case. And while it would have been advisable for the trial court to have warned that it "may be a federal crime" instead of warning that it "is a federal crime," or even to have put a big "X" through the inapplicable language on the injunction form if it undisputedly did not apply to Thomas, this is not a basis for vacating a civil stalking injunction. *See* Utah R. Civ. P. 61.

¶19    Because the trial court's findings are adequate and there is sufficient evidence to support the civil stalking injunction, we conclude that the trial court did not err in granting it. Furthermore, any deficiencies in the trial court's ruling and the text of the injunction document are not significant enough to justify vacating the civil stalking injunction.

¶20    The term of the injunction, unless earlier dissolved, is three years, and the injunction has no bearing on Thomas's federal rights concerning firearms. With those clarifications, the injunction is affirmed.

————————