**2015 UT App 238**

# THE UTAH COURT OF APPEALS

MONICA JUDD,
Appellee,
*v.*
ERIC IRVINE,
Appellant.

Per Curiam Decision
No. 20150134-CA
Filed September 17, 2015

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 140401203

Eric Irvine, Appellant Pro Se

Monica Judd, Appellee Pro Se

Before JUDGES GREGORY K. ORME, J. FREDERIC VOROS JR., and
JOHN A. PEARCE.

PER CURIAM:

¶1     Eric Irvine appeals from a civil stalking injunction entered against him. We affirm.

¶2     After Monica Judd obtained an ex parte civil stalking injunction against Irvine, he requested an evidentiary hearing. At the conclusion of that hearing, the district court made oral findings in a ruling from the bench, as permitted by rule 52 of the Utah Rules of Civil Procedure. "On appeal, when a trial court has made findings of fact to support a civil stalking injunction, we will recite the facts in a light most favorable to the trial court's findings." *Sheeran v. Thomas*, 2014 UT App 285, ¶ 2 n.1, 340 P.3d 797. Therefore, we do not recite Irvine's evidence that contradicts the court's findings, except as necessary to address his specific claims on appeal. *See id.* "Our recitation of

the facts also includes findings implicitly made by the trial court and matters that are undisputed in the record." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶3 Judd and Irvine were previously employed at the same company. Although they were on the same team at work, they were not friends, and Judd did not know Irvine well. At Irvine's request, Judd gave him a ride home from work as a favor. While she was driving him home, Irvine made a comment about women's breasts that made Judd uncomfortable. After Judd gave Irvine a ride home, she observed him constantly staring at her while she was at work. Other people observed Irvine staring at Judd and mentioned it to her. On or about August 16, 2014, Judd's fiancé received a message on Facebook that he and Judd believed originated with Irvine (the August 16 incident). Judd read the entire Facebook message into the record at the evidentiary hearing. In crude sexual slang, the message alleged an encounter between Irvine and Judd. It also alleged that Judd had made negative comments about her fiancé. It concluded with the words, "She must pay."

¶4 Judd also received Facebook messages that Irvine had sent to a mutual acquaintance and former co-worker of both Judd and Irvine. The messages provided to Judd by the mutual acquaintance included statements that Irvine and Judd had a sexual encounter while they were employed by the same company. The district court reviewed the messages forwarded to Judd by the mutual acquaintance, clarifying that they were "communications [Irvine] made to [the mutual acquaintance] about [Judd]." Judd stated that the messages had pictures of her and talked about her. Irvine testified that he and Judd had a sexual encounter during their employment at the same company and admitted that he shared that information with the mutual acquaintance in Facebook messages. Judd denies having any sexual or other relationship with Irvine. The district court did not allow Judd to introduce a written statement from the mutual

acquaintance, who was not present at the hearing. The district court also did not allow Judd to testify that other women allegedly had obtained stalking injunctions against Irvine. Judd presented testimony from two other witnesses to the effect that she was upset and frightened by Irvine's alleged actions.

¶5     Irvine denied that he made the statements to Judd's fiancé on Facebook in the August 16 incident and requested further proof. After he examined copies of the Facebook messages, he stated, "I see no proof on here that this message came from me. It just says, 'Facebook user.'" Irvine denied that he made any threatening statements or acted in any way that would make a reasonable person afraid.

¶6     At the conclusion of the evidentiary hearing, the district court ruled,

> I'm not persuaded so much with the statement to [the mutual acquaintance], which is more of a private communication by the defendant; but I do find there is a basis to support the stalking injunction from the evidence that the court has received, which included the characterization of the ride home and the staring at the petitioner at work, and the communications on Facebook . . . to her fiancé, all of which I think substantiate and give a basis for the grant of the stalking injunction, which the court will grant.

¶7     We construe Irvine's brief as making the following claims on appeal. First, he contends that the August 16 incident was insufficient to support granting a civil stalking injunction. Second, he claims that the district court admitted evidence in violation of the best evidence rule and the rule against hearsay. Third, he claims that the testimony at the hearing was insufficient to satisfy the burden of proof to support granting a civil stalking injunction. Irvine's brief suggests that he also

argues that the evidence did not demonstrate a "course of conduct" directed at Judd. *See* Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2012). Irvine's claims that the district court admitted evidence in violation of the best evidence rule or the rule against hearsay are both unpreserved in the record and inadequately briefed. "Therefore, because of the inadequacies of [his] brief, [Irvine] has failed to carry [his] burden of persuasion on appeal." *Stokes v. TLCAS*, 2015 UT App 98, ¶ 27, 348 P.3d 739. Even assuming that the claims concern the Facebook messages received by Judd's fiancé, Irvine examined copies of the messages at the hearing, but he did not make an objection in the district court based upon the best evidence rule. Similarly, Irvine did not make any objection to specific evidence based upon the hearsay rule. Furthermore, the district court excluded items of evidence, including the written statement by the absent mutual acquaintance, that would have constituted hearsay.

¶8    We review for correctness a challenge to the legal determination that Irvine engaged in a "course of conduct" constituting stalking. *Bott v. Osburn*, 2011 UT App 139, ¶ 5, 257 P.3d 1022. Because Irvine did not object to "the adequacy of the findings by alerting the district court to any perceived deficiencies," we address his remaining claims as a challenge to the sufficiency of the evidence to support the factual findings that supported the grant of a civil stalking injunction. *See Sheeran v. Thomas*, 2014 UT App 285, ¶ 8 n.3, 340 P.3d 797. Although "the trial court's findings are relatively sparse," "the evidence and statements in the record make the evidentiary basis for the ruling sufficiently clear." *Id.* ¶ 10. We review a challenge to the district court's factual findings for clear error. *Ellison v. Stam*, 2006 UT App 150, ¶ 17, 136 P.3d 1242. Accordingly, "we will affirm the trial court's decision to grant the civil stalking injunction unless it is against the clear weight of the evidence or we reach a definite and firm conviction that there was a mistake." *Sheeran*, 2014 UT App 285, ¶ 8. Irvine has not undertaken the analysis necessary to demonstrate that the

district court's factual findings were clearly erroneous. *See Butters v. Herbert*, 2012 UT App 329, ¶ 8 n.4, 291 P.3d 826 (concluding that by failing to marshal the evidence with respect to the appellant's factual challenge, the appellant did not meet his burden on appeal).

¶9     We next consider Irvine's legal claim that the district court erred in concluding that Irvine engaged in a "course of conduct," as defined by Utah Code section 76-5-106.5(1)(b), which requires two or more acts directed at a specific person. *See* Utah Code Ann. § 76-5-106.5(1)(b). Although Irvine seeks to have us focus narrowly on the August 16 incident, we have stated that we

> do not read the plain language of the Stalking Statute to require that each act or incident independently be such as to cause a reasonable person to fear for his or her safety; rather, it is the pattern of behavior or the course of conduct considered in the context of the circumstances that must have that cumulative effect.

*See Coombs v. Dietrich*, 2011 UT App 136, ¶ 13, 253 P.3d 1121. The evidence supports the trial court's conclusion that Irvine engaged in a course of conduct directed toward Judd. While Irvine and Judd were employed at the same company, Irvine made a statement during a ride home from work that caused Judd discomfort, and he subsequently stared at her constantly while they were at work. The separate August 16 incident was based upon Facebook messages that included crude, sexually explicit comments about Judd and culminated with threats of harm and "revenge" for alleged wrongdoing by Judd. The district court implicitly found Judd's claim that the Facebook messages to her fiancé were from Irvine to be credible and found Irvine's denial that he was the author not to be credible. The message threatened both Judd and her fiancé with harm.

Accordingly, we conclude that the district court was correct in concluding that Irvine knowingly engaged in a course of conduct directed toward Judd and consisting of two separate incidents.

¶10    Finally, we consider Irvine's claim that the course of conduct would not cause a "reasonable person . . . to fear for the person's own safety or . . . to suffer other emotional distress." *See* Utah Code Ann. § 76-5-106.5(2). Again, "we do not view the incidents in isolation when determining whether a reasonable person in [Judd's] position would fear for her safety" or suffer other emotional distress. *Butters*, 2012 UT App 329, ¶ 18; *see also Coombs*, 2011 UT App 136, ¶ 13. The district court in this case concluded that the course of conduct demonstrated by "the characterization of the ride home and the staring at the petitioner at work, and the communications on Facebook . . . to her fiancé" "substantiate[d] and gave a basis for the grant of the stalking injunction." We agree. The message to Judd's fiancé included threats of harm and referred to taking revenge on Judd and making her "pay." Considered with Irvine's other behaviors directed at Judd, we conclude that a reasonable person would fear for her safety or suffer other emotional distress. The district court's decision to grant the civil stalking injunction was not against the clear weight of the evidence, nor are we convinced that the trial court made a mistake of law in granting the civil stalking injunction.

¶11    Affirmed.

———————