2022 UT App 33

# THE UTAH COURT OF APPEALS

MICHAEL EARL NOEL,
Appellee,
*v.*
WILLIAM THOMAS JAMES,
Appellant.

Opinion
No. 20200565-CA
Filed March 10, 2022

Sixth District Court, Kanab Department
The Honorable Marvin D. Bagley
No. 190600053

William Thomas James, Appellant Pro Se

Frank D. Mylar, Attorney for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN D. TENNEY concurred.

HAGEN, Judge:

¶1    To obtain a civil stalking injunction, a petitioner must establish by a preponderance of the evidence that the alleged stalker's "course of conduct . . . would cause a reasonable person: (a) to fear for the person's own safety or the safety of a third person; or (b) to suffer other emotional distress." Utah Code Ann. § 76-5-106.5(2) (LexisNexis Supp. 2021); *see id.* §§ 78B-7-102(21), -701(1), -701(5). In this case, the district court granted a stalking injunction against Appellant William James, but it made no finding as to whether James's course of conduct would have caused a reasonable person in Appellee Michael Noel's position to fear for his safety or suffer emotional distress. Because the basis for the injunction is not apparent in the record, we vacate

the injunction and remand for additional proceedings consistent with this opinion.

BACKGROUND[1]

¶2     Noel sought a stalking injunction after he and James were kicked out of a Kanab City Council meeting. Noel is an experienced public official who previously served as a state legislator for sixteen years and now serves as the executive director of the Kane County Water Conservancy District. James is a member of a local conservancy group. Both had attended the meeting to give public comment on a controversial permitting issue.

¶3     Noel "got up and got in line" once the comment period opened. James then "got up from the corner" and joined Noel in line. As Noel later testified, "[James] came right at me in kind of a burly manner . . . requiring me to move over for him to get by in an intimidating way. . . . I'm not saying I was fearful, but he came at me and forced me" to move aside. "If I wouldn't have moved, he would have banged into me."

¶4     While waiting in line, Noel decided he wanted to be the last person to address the council. Accordingly, he left his place in line and moved to the back. James, however, "wanted to prevent [Noel] from having the last word on [him]"—so he, too, gave up his spot and moved to the back of the line. Noel eventually gave up waiting in line altogether. But when he turned to leave, James stood in his way "to stop [Noel] from

_____

1. "On appeal, when a trial court has made findings of fact to support a civil stalking injunction, we will recite the facts in a light most favorable to the trial court's findings." *Sheeran v. Thomas*, 2014 UT App 285, ¶ 2 n.1, 340 P.3d 797.

getting behind" him once again. And so Noel and James "jockeyed" for a few moments, with Noel unable to get past James and James unwilling to let Noel through. Noel testified,

> I wanted him to get out of the way, and he was blocking me, and it did anger me to do that. But I was also wondering if there was going to be a confrontation here. I was actually fearful that he might, you know, . . . take a shot at me.

¶5 Noel called James "a worthless piece of garbage." James, in turn, shouted to the audience, relaying what Noel had just called him. At this point, law enforcement intervened and asked both men to leave the meeting. Noel went home, and James was arrested after he refused to comply. At the encouragement of the chief of police, Noel later petitioned for a civil stalking injunction against James.

¶6 The district court held a full-day evidentiary hearing on the petition. At the hearing, James sought to admit videos of both the city council meeting and a chamber of commerce meeting earlier that day through a witness who had attended both meetings. The videos had not been previously disclosed.

¶7 When the issue first arose, the court and counsel for both parties were under the impression that there were only two videos—one of the chamber of commerce meeting recorded by the witness herself and one of the city council meeting recorded by a videographer hired by the conservancy group. Noel stipulated to the admission of the first video, but he objected to the second video because the videographer was not present to lay foundation. Specifically, Noel's counsel explained, "If there's a woman here [who] says she videoed this on her camera, and it accurately depicts what she videoed on her camera, and she was there at the meeting, and she's subject to cross-examination, and

she made the video, I think that that's proper. But the other one I don't."

¶8 But when the witness was called to testify, she explained that there were actually three videos: one video from each of the two meetings that she recorded with her personal cell phone, and a third video from the city council meeting recorded by the videographer. At that point, Noel's counsel objected to the admission of all three videos because they had not been disclosed and he was "surprised" that they were being offered as evidence. James's counsel did not dispute that the videos had not been disclosed in advance but claimed that, when the matter was discussed earlier, Noel "had stipulated to anything that [the witness] had personally recorded." In response, Noel's counsel argued that he had merely stipulated to the chamber of commerce video: "That's all we were discussing at the time." The court agreed with Noel's counsel that the stipulation was limited to the chamber of commerce video. And because Noel "didn't make the objection before about not having [the chamber of commerce video] in advance," the court held him to that stipulation. The court received the chamber of commerce video into evidence per the stipulation, but excluded the other two based on the objection.

¶9 At the conclusion of the hearing, the district court determined that James had engaged in a course of conduct directed at Noel, as required under the civil stalking statute. The court found that the course of conduct consisted of two component acts, each committed at the city council meeting: (1) when James approached Noel "in a kind of burly manner," and (2) when James "blocked [Noel] from going back to his seat." The court did not make an express finding that James's conduct would cause a reasonable person in Noel's circumstances to fear for his safety or suffer emotional distress. Nonetheless, the court granted the requested stalking injunction.

ISSUES AND STANDARDS OF REVIEW

¶10    James now appeals, contending that the district court erred in imposing a civil stalking injunction against him.[2] James primarily argues that his course of conduct would not have caused a reasonable person in Noel's circumstances to fear for his safety or suffer emotional distress. Although the question of whether "a reasonable person would suffer fear or emotional distress" under the circumstances "is a question of fact that we review for clear error, we review the district court's interpretation [and application] of the underlying legal standard for correctness." *Ragsdale v. Fishler*, 2021 UT 29, ¶ 16, 491 P.3d 835; *see also Baird v. Baird*, 2014 UT 08, ¶ 16, 322 P.3d 728 ("The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." (cleaned up)).

¶11    James also challenges the district court's decision to exclude video evidence of the city council meeting. Specifically, he contends that the "videos met the [parties'] stipulation for new video evidence" and that, therefore, the district court erred by excluding them. "The scope of a stipulation presents a question of fact, which we review for clear error." *Fuller v. Bohne*, 2017 UT App 28, ¶ 9, 392 P.3d 898 (cleaned up).

---

2. James, a non-attorney, represents himself in this appeal. We hold him "to the same standard of knowledge and practice as any qualified member of the bar," but accord him "every consideration that may reasonably be indulged." *See State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171 (cleaned up).

ANALYSIS

## I. Civil Stalking Injunction

¶12 To obtain a civil stalking injunction, the petitioner "must prove by a preponderance of the evidence that 'an offense of stalking has occurred.'" *Ragsdale v. Fishler*, 2021 UT 29, ¶ 25, 491 P.3d 835 (quoting Utah Code Ann. § 77-3a-101(7) (LexisNexis 2017)).[3] "The crime of stalking consists of two elements. First, a person must 'intentionally or knowingly engage in a course of conduct directed at a specific person.'" *Id.* (cleaned up) (quoting Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2017)). By statute, a "'[c]ourse of conduct' means two or more acts directed at or toward a specific person." Utah Code Ann. § 76-5-106.5(1)(a) (LexisNexis Supp. 2021) (listing several examples of qualifying acts). Second, the respondent "must 'know or should know that the course of conduct would cause a reasonable person' to 'fear for the person's own safety' or 'suffer other emotional distress.'" *Ragsdale*, 2021 UT 29, ¶ 25 (quoting Utah Code Ann. § 76-5-106.5(2)). A "reasonable person" is statutorily defined as "a reasonable person in the victim's circumstances." § 76-5-106.5(1)(d).

¶13 Although the district court recited both elements, it made findings on the first element only. It identified an intentional course of conduct consisting of two acts: approaching Noel in a "burly manner" and later blocking Noel from returning to his seat. But the court did not make a factual finding on the second

---

3. Although the 2018 amendment of the civil stalking statute governs this case, we cite the most recent version of the civil stalking statute for convenience—unless a prior version is quoted by a different source. Regardless of the version quoted throughout this opinion, the statutory language at issue is the same.

element, that is, whether James knew or should have known that his course of conduct would have caused a reasonable person in Noel's circumstances to fear for his safety or suffer emotional distress. "When confronted with questions of fact, this court will only rule as a matter of law if the evidence is so clear and persuasive that all reasonable minds would find one way." *See Baird v. Baird*, 2014 UT 08, ¶ 29, 322 P.3d 728 (cleaned up). Otherwise, "remand is appropriate" to allow the district court to make that determination. *See id.*

¶14    Noel acknowledges that the district court never addressed the second element on the record, but he argues that James failed to preserve the issue for appeal. We disagree. To issue a stalking injunction, "the district court necessarily had to consider whether [Noel] had established each element of a stalking offense." *See id.* ¶ 20. Thus, the court had an opportunity to rule on whether the statutory elements were met, and that issue is "adequately preserved" for appeal. *See id.* In any event, James specifically argued to the court that "[t]his [was] not a situation where a reasonable person . . . in [Noel's] position" would have been "afraid of physical harm or . . . in emotional distress." And he moved "essentially for a directed verdict" on that basis. Therefore, we are confident that James presented this issue "to the district court in such a way that the court ha[d] an opportunity to rule on it." *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (cleaned up).

¶15    Alternatively, Noel contends that we can affirm on appeal because the district court "had evidence to determine that James acted in a threatening manner that would have made a reasonable person fearful or suffer some emotional distress over the two encounters." When the district court does "not explicitly make a necessary finding," we may still affirm "if the evidence and statements contained in the record make the evidentiary basis for this finding sufficiently clear." *See Sheeran v. Thomas*, 2014 UT App 285, ¶ 8, 340 P.3d 79 (cleaned up); *see also State v.*

*Bingham*, 2015 UT App 103, ¶¶ 28–29, 348 P.3d 730 (explaining that a reviewing court may "assume that the [district] court found the facts in accord with its decision," unless "the ambiguity of the facts makes this assumption unreasonable" (cleaned up)). But here, the evidentiary basis for finding that Noel satisfied the second element is not sufficiently clear from this record.

¶16    To determine whether the petitioner has met the second element required for a civil stalking injunction, we apply "an individualized objective standard." *Baird*, 2014 UT 08, ¶ 26. Under this standard, the "subjective effect of the respondent's conduct on the petitioner is irrelevant." *Ragsdale*, 2021 UT 29, ¶ 45. Instead, the relevant question is whether the conduct would have caused fear or emotional distress to "a reasonable person *in the petitioner's circumstances.*" *Id.* (quoting *Baird*, 2014 UT 08, ¶ 25). "In applying this standard, courts must consider the entire context surrounding a respondent's conduct" and "must consider the conduct cumulatively, accounting for the facts and circumstances of the individual case." *Id.* (cleaned up).

¶17    Our supreme court has suggested a non-exhaustive list of factors that may be relevant to this assessment. Those factors include "the victim's background, the victim's knowledge of and relationship with the defendant, any history of abuse between the parties, the location of the alleged stalking and its proximity to the victim's children, if any, and the cumulative effect of defendant's repetitive conduct." *Baird*, 2014 UT 08, ¶ 27 (cleaned up). "Furthermore, under an individualized objective standard, a court may consider whether the defendant had knowledge of a particular vulnerability of the victim and then acted with full knowledge of the victim's vulnerability." *Id.* (cleaned up).

¶18    Under this standard, it is far from obvious that a reasonable person in Noel's circumstances would have feared for his safety or suffered emotional distress, given the context in

which James's conduct took place. *See* Utah Code Ann. § 76-5-106.5(2)(a)–(b) (LexisNexis Supp. 2021). The encounter occurred in a public place—a city council meeting—and in full view of a room packed with witnesses. Law enforcement officers were stationed at the meeting and ready to intervene. And Noel is an experienced public official accustomed to dealing with members of the public. *See Baird*, 2014 UT 08, ¶ 27 (indicating that the individualized objective standard considers "the victim's background"). Although Noel testified that James was "a loose cannon" and "a different guy than [Noel had] dealt with in [his] years of public service," the district court made no finding that a reasonable person in Noel's circumstances would have found James particularly threatening. And even though James was ultimately arrested, his arrest was based not on his conduct toward Noel, but on his refusal to comply when law enforcement ordered both men to leave the meeting.

¶19 Noel argues that a reasonable person would fear for his safety under these circumstances. He suggests that the district court's finding that James approached in a burly manner "could mean that James was acting tough or flexing his muscles or puffing his chest in a manner that would suggest physical aggression." Perhaps it could, but we have no findings to that effect. Nor do we have a finding that such a display would cause a reasonable person to fear for his safety in the context in which it occurred—a well-attended, public meeting, with law enforcement officers standing by.

¶20 Noel also argues that the evidence supported a finding that James's conduct would have caused "some emotional distress," but that is not the standard. The stalking statute defines "emotional distress" as "*significant* mental or psychological suffering, whether or not medical or other professional treatment or counseling is required." *See* Utah Code Ann. § 76-5-106.5(1)(b) (emphasis added). Noel has pointed to no evidence in the record that would have clearly supported a

finding that James knew or should have known that his course of conduct would cause a reasonable person in Noel's circumstances to suffer "emotional distress," as defined by statute.

¶21 If the district court applied the correct legal standard and implicitly found the second element satisfied, the evidentiary basis for that ruling is not clear on this record. Although the interaction that occurred at the city council meeting was certainly uncivil, it is not the type of conduct that would ordinarily cause a reasonable person to fear for his physical safety or experience "significant mental or psychological suffering"—at least not without other contextual facts not apparent from the record. *See id.*

¶22 Having heard the evidence firsthand, the district court is in an advantaged position to make factual findings as to whether Noel has proved the second element by a preponderance of the evidence. We ordinarily rely on the district court to make those kinds of assessments, because it has "personally observed the quality of the evidence, the tenor of the proceedings, and the demeanor of the parties." *Baird*, 2014 UT 08, ¶ 30. "This is particularly true in a case like this one where the record consists almost entirely of evidence presented at an evidentiary hearing." *See id.* Therefore, we vacate the injunction and remand for the district court to determine whether Noel has proved the second element under the legal standard explained in this opinion.

## II. Scope of the Stipulation

¶23 Because we are remanding for further findings, we must also reach the question of whether the district court properly excluded video of the interaction between James and Noel at the city council meeting. James argues on appeal that the district court abused its discretion by excluding both videos of the city council meeting, because Noel had stipulated to the admission of

late-disclosed videos so long as James laid sufficient foundation by calling the person who recorded each one.

¶24 But in excluding the videos of the city council meeting, the district court found that the parties' stipulation was limited to the chamber of commerce video. James's counsel asserted that Noel "had stipulated to anything that [the witness] had personally recorded," but Noel's counsel pointed out that, at the time of the stipulation, he was unaware of the existence of the third video and that the only thing counsel had discussed was the chamber of commerce video. The court agreed with Noel's counsel, saying, "That's the way I understood the stipulation."

¶25 The district court's finding that the stipulation was limited to the chamber of commerce video was not clearly erroneous. At the time of the stipulation, the parties were discussing only two videos. Noel stipulated to the admission of the chamber of commerce video taken by the witness and objected to the admission of the city council video taken by the videographer based on lack of foundation. His stipulation to the chamber of commerce video cannot fairly be read as a stipulation to a third video that he did not know existed.

¶26 James has not argued that the videos were timely disclosed, that the disclosure violation could be excused for good cause, or that the failure to disclose was harmless. *See* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure."). Therefore, he has not established any basis on which to reverse the district court's exclusion of the city council videos.

CONCLUSION

¶27    James has not established that the district court erred in excluding the late-disclosed videos of the city council meeting, but he has established that the injunction was entered without the necessary findings. Specifically, the district court made no express finding as to whether James knew or should have known that his course of conduct would have caused a reasonable person in Noel's circumstances to fear for his safety or suffer emotional distress. Because the record does not provide a clear evidentiary basis for the court's decision, we vacate the stalking injunction against James and remand for additional proceedings consistent with this opinion.

—————————