**2017 UT App 28**

# THE UTAH COURT OF APPEALS

DAVID FULLER, RUTH M. FULLER, AND FULLER'S
APPLIANCE PARTS AND SERVICE LLC,
Appellants,
*v.*
DENISE BOHNE AND WESTERN STATES INSURANCE AGENCY,
Appellees.

Opinion
No. 20150146-CA
Filed February 9, 2017

Third District Court, Salt Lake Department
The Honorable Deno G. Himonas
The Honorable Sandra N. Peuler
No. 100901093

Stephen K. Christiansen, Attorney for Appellants

Joseph P. Barrett, Attorney for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and DAVID N. MORTENSEN concurred.

ORME, Judge:

¶1 Appellants David Fuller, Ruth M. Fuller, and Fuller's
Appliance Parts and Service LLC (collectively, the Fullers)
appeal the trial court's judgment awarding them damages and
prejudgment interest in their suit against Denise Bohne and
Western States Insurance Agency (collectively, Western). Their
appeal is limited to the question of whether the trial court
calculated prejudgment interest on the jury award at the proper
rate. We affirm.

BACKGROUND

¶2      The Fullers owned a home and a small business, both located on the same property in Springville, Utah. The Fullers purchased insurance from Western on the home, the business, and their vehicles. Many years later, in June 2007, a fire destroyed their home and business, and they filed a claim with Western, only to learn that they were considerably underinsured. They received $3,000, which, to their surprise, was the maximum benefit payable under the policy.[1]

¶3      The Fullers sued Western and sought damages for, inter alia, breach of various duties, breach of contract, and negligent misrepresentation. Before the trial began, the Fullers and Western stipulated, and the trial court agreed, that the jury would receive the following instruction (Instruction 29) for calculating interest if it awarded damages to the Fullers:

> The Fullers seek recovery of prejudgment interest as part of their loss. In Utah, prejudgment interest may be awarded in situations where the damage is complete, the loss can be measured by facts and figures, and the amount of loss is fixed as of a particular time. If you find for the Fullers on their claim of prejudgment interest, you should award them 10% annually on the value of their proven loss from the date of the fire to the date of your verdict.

¶4      Just before the court instructed the jury, however, Western asked the trial court to withdraw Instruction 29 and to decide the issue of prejudgment interest itself. The Fullers challenged this request, and Western then conceded that

---

1. The $3,000 benefit is so small as to suggest a number of questions, none of which find answers in the record before us.

prejudgment interest would be recoverable if the jury's verdict included an amount for property damages. Western indicated that it was simply asking the court to do the math in calculating the amount of prejudgment interest. The Fullers agreed with this approach, and the trial court stated that it was "fine" with the rate of ten percent and that it could readily make the appropriate calculation: "it's a 10 percent calculation and you can do it in your head." Thus, Instruction 29 was withdrawn.

¶5     The jury returned a verdict against Western on the claims of negligent misrepresentation and breach of agency duties, awarding the Fullers $101,595 for their lost property.

¶6     When the Fullers moved for the entry of judgment on the verdict, Western opposed the inclusion of prejudgment interest and the calculation of prejudgment interest at ten percent. After a hearing, the court issued a memorandum decision that, in relevant part, sought supplemental briefing as to the appropriate interest rate. The court stated:

> From the record before me, it appears that [Western] did not stipulate to an absolute award of any prejudgment interest that [the Fullers] requested. Rather, in withdrawing the jury instruction on that issue, the parties agreed that the Court should make the final determination regarding prejudgment interest after the conclusion of the trial and add that amount to the final judgment.

¶7     In a telephonic hearing held after supplemental briefing was complete, the trial court, "having gone back and listened to the tape [of the prior hearing] very carefully," concluded that the parties had stipulated to the court's awarding prejudgment interest. But on the issue of the rate, the court did not agree with the Fullers that the stipulation included the rate of ten percent, even though the instruction that it supplanted had included that

rate. To begin the discussion, the judge commented that perhaps the postjudgment rate, not the ten percent rate, was proper. The court's questions to counsel focused their attention on Utah precedent suggesting that the ten percent statutory rate only applies to certain contract-based claims.

¶8     Ultimately, the court determined that while Western had stipulated to the award of prejudgment interest, its stipulation to the rate of ten percent had fallen by the wayside when the jury instruction was withdrawn. The court concluded that the proper rate was the statutory postjudgment rate of 2.27% per annum. It also determined that interest would accrue from the date of the fire until the judgment is paid in full. The Fullers appeal.

ISSUES AND STANDARDS OF REVIEW

¶9     The Fullers raise two main issues on appeal. First, they assert that "[t]he district court abused its discretion by declining to enforce the parties' stipulation to apply a 10% prejudgment interest rate" and, relatedly, that section 15-1-1 of the Utah Code requires a ten percent prejudgment interest rate. *See* Utah Code Ann. § 15-1-1 (LexisNexis 2013). The applicability and interpretation of a statute are questions of law that we review for correctness. *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 11, 210 P.3d 263. The scope of a stipulation presents a question of fact, *see Prinsburg State Bank v. Abundo*, 2011 UT App 239, ¶ 8, 262 P.3d 454, *aff'd on other grounds*, 2012 UT 94, ¶ 10, 296 P.3d 709, which we review for clear error. *Brasher v. Christensen*, 2016 UT App 100, ¶ 13, 374 P.3d 40.

¶10     Second, the Fullers claim that if the trial court was free to choose the applicable rate, "[t]he district court [erred] by applying a low 2015 post-judgment interest rate when prejudgment interest began running in 2007," at which time the rate was higher. The appropriate rate of prejudgment interest

ordinarily "is a question of law that we review for correctness." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 32, 372 P.3d 629.

ANALYSIS

## I. The Trial Court Did Not Abuse Its Discretion in Declining To Calculate Prejudgment Interest at Ten Percent.

¶11    The Fullers assert that the trial court was required, by stipulation and by statute, to calculate prejudgment interest at ten percent per annum. We conclude that neither the stipulation regarding interest nor Utah Code section 15-1-1 bound the trial court and that it did not abuse its discretion in rejecting the ten percent rate that the Fullers advocated.

### A.    Stipulation

¶12    The Fullers' argument, in effect, is that the stipulation had two distinct parts, each of which should have been enforced: (1) stipulation to the award of prejudgment interest if the jury awarded property damages and (2) stipulation to prejudgment interest at a rate of ten percent per annum, as a carry-over from Instruction 29, which the stipulation supplanted.[2]

---

2. The Fullers view this as a single stipulation that includes both terms. Because of their view that the agreement was to both terms, they argue, quoting *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 14, 296 P.3d 709, that Western needed to prove either "that the stipulation was 'entered into inadvertently' or that it should be set aside 'for justifiable cause'" to challenge the ten percent rate. But that assumes the scope of the stipulation is clear, which is not the case. *See infra* ¶¶ 13–15. For that reason, we decline to address their claims that Western waived its right

(continued…)

1.      Stipulation to Prejudgment Interest

¶13    Stipulations generally "are binding on the parties and the court." *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 13, 296 P.3d 709. Where parties stipulate to a fact and the court accepts that stipulation, the matter is settled and, generally, is not subject to appellate review. *Id.* Here, the trial court determined that, during the discussion of whether to allow the jury to be instructed about prejudgment interest, the parties stipulated that prejudgment interest would apply to any property damages award made by the jury. The record showed that Western did not dispute the Fullers' entitlement to prejudgment interest. Thus, the court concluded that Western had "stipulated away" its right to challenge the availability of prejudgment interest when it conceded that an award for property damage would bring with it prejudgment interest. And the parties agree on appeal that this conclusion was correct.

2.      No Stipulation to Interest Rate

¶14    The trial court did not clearly err by concluding that Western did not stipulate to a particular prejudgment interest rate. The scope and terms of a stipulation, like any other contract, are construed "to give effect to the intentions of the parties." *DeBry v. Occidental/Nebraska Fed. Sav. Bank*, 754 P.2d 60, 62 (Utah 1988) (citation and internal quotation marks omitted). *See also Prinsburg State Bank v. Abundo*, 2011 UT App 239, ¶ 8, 262 P.3d 454 (affirming that the parties' intent, including the parties' intended scope of the stipulation, is a "question[] of fact that [is] appropriately directed, in the first instance, to the district court"), *aff'd on other grounds*, 2012 UT 94, ¶ 10, 296 P.3d 709.

---

(…continued)
to dispute the interest rate and that Western's challenge to the ten percent interest rate was untimely.

¶15    After reviewing the trial transcript and briefing from the parties, the trial court concluded that the parties' stipulation, unlike the earlier Instruction 29, did not include an agreement as to the particular interest rate to be charged. The Fullers argue this was clearly erroneous because Instruction 29, which the stipulation negated, would have had the jury assess an annual interest rate of ten percent on "the value of their proven loss." And the Fullers note that the trial judge recited that rate during the stipulation discussion when he said, "[I]t's a 10 percent calculation and you can do it in your head."

¶16    But the Fullers focus on facts that do not reveal the parties' intent in forming the stipulation. The parties' discussion about withdrawing Instruction 29, which ultimately led to the stipulation in question, did not address the rate at which interest was to be assessed even though the proposed instruction did contain a reference to ten percent. Rather, they discussed whether the calculation of interest should appear on the special verdict form, which led to a discussion of whether prejudgment interest was an appropriate question for the jury or if, instead, the court should resolve the issue. Neither party raised the issue of the precise interest rate to be charged if the jury awarded property damages. Instead, only the court mentioned a rate, apparently with the soon-to-be-withdrawn instruction in mind, in a comment about the court's ability to readily perform a ten percent interest calculation.[3]

---

3. The court's cursory reference to the ten percent rate, during the discussion just before the case went to the jury, may only have reflected the possibility that Utah Code section 15-1-1 might govern because there were, at that point, pending contract claims. *See* Utah Code Ann. § 15-1-1(2) (LexisNexis 2013) ("Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum."). (continued…)

¶17   The Fullers point to no additional facts in the record that demonstrate that the court was referring to the parties' intent in entering into their stipulation and not to Instruction 29 when it mentioned the ten percent rate. Thus, it is entirely possible that the parties did not intend at that time to address the rate at all and instead assumed the rate would be resolved at a later date. In light of the deference we give to the trial court's assessment of the parties' intent in entering the stipulation—especially because the stipulation was not written or otherwise memorialized, which would allow us to more directly assess their intent—we cannot conclude that the trial judge, who participated in the discussion and approved the stipulation, clearly erred in concluding that the stipulation did not include an agreement that the ten percent rate would apply.

B.     Statute

¶18   The Fullers next contend that Utah Code section 15-1-1 entitles them to prejudgment interest on their successful negligence claims at a rate of ten percent per annum because those claims "are undoubtedly choses in action."[4] *See* Utah Code Ann. § 15-1-1(2) (LexisNexis 2013). The statute specifies that "[u]nless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of

---

(…continued)
When the jury returned a no-cause-of-action verdict on the breach of contract claims, the applicability of the ten percent rate became less obvious. *See infra* ¶ 19.

4. "A 'chose in action' is defined as 'a claim or debt upon which a recovery may be made in a lawsuit.' Essentially, the phrase is another way of describing a right to sue or cause of action." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 106 n.189, 372 P.3d 629 (quoting *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, ¶ 9, 980 P.2d 208).

any money, goods, or chose in action shall be 10% per annum." *Id.* But, as the Utah Supreme Court recently determined, section 15-1-1 applies only to judgments arising out of certain types of contract claims. *See USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 109, 372 P.3d 629 (limiting application of Utah Code section 15-1-1 to judgments for "contracts 'for the loan or forbearance of any money, goods, or chose in action'") (quoting Utah Code Ann. § 15-1-1(2)).[5] Given the statute's limited reach, it follows that it does not apply where, as here, the judgment is based on tort claims. *See Wilcox v. Anchor Wate Co.*, 2007 UT 39, ¶ 46, 164 P.3d 353 (declining to apply Utah Code section 15-1-1 to a judgment for damages under the Utah Insurers Rehabilitation and Liquidation Act because it "does not automatically apply to all judgments based on statute where the legislature has failed to specify the applicable rate"). *See also Klein v. Patterson*, No. 2:11-CV-723, 2013 WL 5445949, at *1 (D. Utah Sept. 30, 2013) ("While the statute does refer to a 'chose in action,' it does so within the context of 'a lawful contract.'") (quoting Utah Code Ann. § 15-1-1(2)).

¶19    The Fullers argue, nonetheless, that if a party has a chose in action that it does not collect on immediately, forbearance has occurred, triggering the statutory ten percent rate. Relying on *Fell v. Union Pacific Ry.*, 88 P. 1003, 1007 (Utah 1907), the Fullers maintain that this reasoning "has continued to be followed since [1907] and remains good law down to the present day." On the

---

5. *USA Power, LLC v. PacifiCorp*, 2016 UT 20, 372 P.3d 629, was decided on May 16, 2016, after briefing in this case was complete. The Fullers accordingly filed a letter pursuant to rule 24(j) of the Utah Rules of Appellate Procedure, notifying us of the opinion. They did not challenge the applicability of the rule announced in that opinion to their appeal—and appropriately so. *See SIRQ, Inc. v. The Layton Cos.*, 2016 UT 30, ¶ 6, 379 P.3d 1237.

contrary, at least one justice of the Utah Supreme Court has expressed skepticism about that interpretation of the statute, as far back as 1994. *See Consolidation Coal Co. v. Utah Div. of State Lands & Forestry*, 886 P.2d 514, 524 n.13 (Utah 1994) ("The author of this opinion has serious reservations about the initial correctness and therefore the continued vitality of . . . case[s] that purport[] to tie prejudgment interest rates in all contract cases to the section 15-1-1 rate[.]"). Later, in *Wilcox*, the Utah Supreme Court explained the reticence expressed in *Consolidation Coal*, saying that it was "because [section 15-1-1] was meant to apply only to loans or forbearances in contract actions." 2007 UT 39, ¶ 45. True, this court has previously expressed some doubt about whether *Wilcox* meant that section 15-1-1 no longer applied to a chose in action that did not involve a contract for a loan or forbearance. *See Francis v. National DME*, 2015 UT App 119, ¶ 44, 350 P.3d 615 (declining to conclude that the district court erred in applying section 15-1-1's ten percent rate because "interpret[ing] this statute requires a more complex analysis on our part than [the appellant]'s sparse briefing seems to justify"). But *USA Power* conclusively limits the application of section 15-1-1 to such contracts. 2016 UT 20, ¶ 109. Therefore, section 15-1-1 does not apply to the Fullers' tort-based claims in this case.[6]

---

6. The Fullers also suggest that even if *USA Power* and *Wilcox v. Anchor Wate Co.*, 2007 UT 39, 164 P.3d 353, foreclosed the application of section 15-1-1 to tort claims, they were nonetheless entitled to a ten percent interest rate because the stipulation is a contract within the confines those cases established. At oral argument they advanced this position, asserting that the parties mutually agreed to the availability of prejudgment interest at a ten percent rate in exchange for the withdrawal of jury Instruction 29 at Western's request. While we agree that a stipulation is a contract, *see supra* ¶ 13, the stipulation in this case was not a contract for the loan or forbearance of any money,

(continued…)

## II. The Trial Court Did Not Err by Assessing Prejudgment Interest at a Rate of 2.27%.

¶20    Finally, the Fullers contend that even if they were not entitled to a ten percent interest rate, the trial court erred in setting the rate at 2.27%. Hence, they ask this court to remand with instructions, presumably for recalculation at the 2007 postjudgment rate of 6.99%. The Fullers argue for the 2007 rate based on three theories: (1) that "[i]f prejudgment interest is to be applied using a post-judgment rate, it should at least be the rate in effect at the time the prejudgment interest began running"; (2) that the purpose of prejudgment interest is to compensate plaintiffs who experience loss after wrongful conduct, which the Fullers claim "cannot be accomplished in this case by using a low rate that came into effect years after the tortious conduct and bears no resemblance to market rates at the time"; and (3) that the relevant case law suggests the proper solution in a dispute is to find a "middle ground" figure.[7]

---

(…continued)

goods, or chose in action. Thus, it is not the sort of contract contemplated by the statute, *see* Utah Code Ann. § 15-1-1(2) (LexisNexis 2013), as interpreted in *USA Power*, 2016 UT 20, ¶ 109.

7. The Fullers also argue that if the trial court relied on *Wilcox* in setting the rate, it erred in doing so. *See* 2007 UT 39, ¶ 46 (relying on federal bankruptcy law in determining the appropriate prejudgment interest rate given the circumstances of that case). They argue that *Wilcox* is inapposite, at least as to the particular rate, because that case drew from relevant federal bankruptcy law for the rate it applied. *Id.* ¶ 47. We decline to address the applicability of *Wilcox* here because the Fullers have not shown that the trial court relied on that case in reaching its conclusion.

¶21    When the Fullers raised these arguments below, there was some question about what interest rate should apply if section 15-1-1 of the Utah Code did not apply. In *USA Power*, our Supreme Court resolved that question: "[Utah Code] section 15-1-4 provides the appropriate interest rate" when "the interest rate provided [in section 15-1-1] does not apply." 2016 UT 20, ¶ 109.

¶22    Utah Code section 15-1-4 provides, "Except as otherwise provided by law, other civil and criminal judgments of the district court and justice court shall bear interest at the federal postjudgment interest rate as of January 1 of each year, plus 2%." Utah Code Ann. § 15-1-4(3)(a) (LexisNexis 2013).[8] Further, the Utah Code specifies that "[t]he postjudgment interest rate in effect at the time of the judgment shall remain the interest rate for the duration of the judgment." *Id.* § 15-1-4(3)(b).[9] Because section 15-1-1 does not apply here, *see supra* ¶¶ 18–19, section 15-1-4 provides the proper prejudgment interest rate. The federal postjudgment interest rate plus 2% on January 1, 2015, was 2.27%.

¶23    Thus, the trial court's order that Western pay the Fullers "[p]re-judgment interest at the post-judgment statutory rate in effect January 1, 2015 (2.27% per annum)" is fully consistent with Utah law, and we affirm the trial court's decision regarding the appropriate rate of prejudgment interest.

---

8. The most recent codification of this provision refers to "*all* other *final* civil and criminal judgments." Utah Code Ann. § 15-1-4(3)(a) (LexisNexis Supp. 2016) (emphasis added).

9. This language appears in subsection 4(3)(c) in the most recent codification. *See* Utah Code Ann. § 15-1-4(3)(c) (LexisNexis Supp. 2016).

CONCLUSION

¶24    The Fullers have not demonstrated that the trial court abused its discretion by limiting the scope of the stipulation to the availability of prejudgment interest, while rejecting the contention that the stipulation also called for the specific rate of ten percent. And their argument that section 15-1-1 applies to judgments arising from tort claims is unavailing. Therefore, they have not shown that they were entitled to a prejudgment interest rate of ten percent. Further, the trial court did not err in selecting the postjudgment interest rate as the appropriate rate for calculating prejudgment interest in this case.

¶25    Affirmed.

_____