2018 UT App 53

# THE UTAH COURT OF APPEALS

JACQUELINE E. CHRISTENSEN,
Appellee,
*v.*
JOHN D. CHRISTENSEN,
Appellant.

Opinion
No. 20151084-CA
Filed March 29, 2018

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 064100474

Jonathan P. Thomas, Attorney for Appellant

Raymond N. Malouf, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN concurred. JUDGE DAVID N.
MORTENSEN concurred in the result.

ORME, Judge:

¶1     John D. Christensen (Husband) appeals the district court's
order, in which the court refused to reduce Husband's alimony
obligation to Jacqueline E. Christensen (Wife). We affirm.

¶2     Husband and Wife divorced in 2008. The divorce decree
requires Husband to pay Wife $1,100 per month in alimony. The
stipulated decree also provides:

> When [Wife] becomes eligible to receive Social
> Security, alimony will be adjusted to equalize the
> Social Security incomes of both of the parties. For
> example, if [Husband]'s monthly Social Security
> incomes is $2,000.00 and [Wife]'s monthly Social

> Security incomes is $1,000.00, such shall require an alimony payment of $500.00 to [Wife] to equalize the monthly Social Security incomes of the parties.

¶3 Wife became eligible to receive Social Security benefits in 2015. Soon thereafter, Husband filed a motion, seeking to equalize the parties' Social Security income and to reduce his alimony obligation. At the time of his motion, neither party was actually receiving Social Security income.

¶4 Following a hearing, the district court's commissioner concluded that equalizing Social Security incomes would be premature because neither party had actually started receiving Social Security income. Husband timely objected to the commissioner's ruling, and the district court held a hearing on the objection. The district court concluded that the language of the divorce decree did not entitle Husband to reduce his alimony payment nor did it contemplate Social Security equalization until both parties began receiving Social Security benefits. Husband appeals.

¶5 On appeal, "the burden of persuasion falls squarely on an appellant." *Jensen v. Skypark Landowners Ass'n*, 2013 UT App 48, ¶ 7, 299 P.3d 609. *See* Utah R. App. P. 24(a)(8). Specifically, the appellant must "convince us that the trial court committed error." *Nelson v. Liberty Acquisitions Servicing LLC*, 2016 UT App 92, ¶ 12, 374 P.3d 27 (citation and internal quotation marks omitted). As hereinafter explained, Husband has failed to demonstrate that the district court's interpretation of the divorce decree was erroneous as a matter of law.

¶6 Ordinarily, we interpret a divorce decree as we would any other written instrument, construing it in accordance with its plain meaning and according no deference to the district court's interpretation. *See Gardner v. Gardner*, 2012 UT App 374,

¶¶ 14, 24, 294 P.3d 600. But where, as here, the agreement is ambiguous,[1] the trial court ordinarily considers extrinsic evidence in an effort to resolve the ambiguities and will make findings of fact to resolve any disputed evidence, to which findings we defer. *See, e.g., Lyngle v. Lyngle*, 831 P.2d 1027, 1030 (Utah Ct. App. 1992) ("[W]hen a divorce decree is ambiguous extrinsic evidence as to the parties' intention may be received and considered.") (citation and internal quotation marks omitted). In this case, however, neither party recognized the ambiguity within the provision at issue, requested an evidentiary hearing, or endeavored to introduce extrinsic evidence to clarify their intent and aid the court in interpreting the provision. Instead, Husband and Wife each proceeded as though the meaning of the divorce decree was clear on its face and capable of construction as a matter of law. To be sure, each advanced a different interpretive theory. As teed up by the parties, then, the question for the district court was which of the two interpretations reflected the plain meaning of the decree. Thus, we review the district court's interpretation of the divorce decree without the benefit of findings of fact based on extrinsic evidence as to what the parties intended.

¶7    Husband argues that the language of the divorce decree is "very specific." He first claims that equalization of Social

---

1. The ambiguity is threefold: Was the contemplated adjustment to be triggered when Wife first became eligible for Social Security benefits or only when one or both of the parties actually started receiving Social Security benefits? Would the so-called alimony contemplated in the provision be in addition to any regular alimony then being received by Wife, or would this alimony supplant any regular alimony being received by Wife? Why was the allocation of Social Security benefits treated as a matter of alimony rather than as the more straightforward allocation of retirement benefits?

Security benefits should have occurred when Wife became eligible to receive income from Social Security, not when she actually chose to start receiving it. In support of his position, Husband points to this language in the decree: "When [Wife] becomes eligible to receive Social Security, alimony will be adjusted to equalize the Social Security incomes of both of the parties."

¶8 While we think that Husband's interpretation is plausible, Husband has not shown that the district court's acceptance of the contrary interpretation advanced by Wife was wrong as a matter of law. The latter portion of the same sentence, with our emphasis, indicates that "the Social Security *incomes*" will be equalized—not the *potential* incomes. Additionally, the example set forth in the decree itself suggests that receiving income from Social Security is a prerequisite to equalization. The decree states that "if [Husband]'s monthly Social Security incomes is $2,000.00 and [Wife]'s monthly Social Security incomes is $1,000.00, such shall require an alimony payment of $500.00 to [Wife] to equalize the monthly Social Security incomes of the parties." This language focuses on the income each party receives from Social Security, and it does not allude to equalizing Social Security income that is merely theoretical, i.e., benefits that a party might be entitled to receive but has not yet opted to receive.[2]

¶9 Husband also claims that the provision mandating the equalization of Social Security benefits constituted an alimony payment that would supplant, rather than supplement, his

---

2. Deferring Social Security benefits is not necessarily a bad idea. As we understand it, the longer one puts off receiving Social Security income, the greater one's benefit will be once payment starts. *See Retirement Planner: Delayed Retirement Credits*, Social Security Administration, https://www.ssa.gov/planners/retire/delayret.html [https://perma.cc/7KUS-5GWR].

existing alimony obligation. His interpretation relies on the same portion of the decree, which instructs that "alimony will be adjusted to equalize the Social Security incomes of both of the parties." Husband asserts that a contrary interpretation would require him to use his other retirement funds to pay alimony even though those funds were awarded to him as separate property.

¶10  Again, although Husband's interpretation is plausible, he has not established that the district court's contrary interpretation, in accordance with the interpretative theory advanced by Wife, was erroneous as a matter of law. There is no language in the decree that expressly indicates that the equalized Social Security payment replaces Husband's prior alimony obligation. If anything, the word "adjusted" suggests just the opposite. Additionally, while we are not certain why the equalization of Social Security income is classified as alimony,[3] the example included in the decree states, with our emphasis, that such equalization will serve as "*an* alimony payment." This could be construed as contemplating an additional, rather than the exclusive, alimony payment. And Husband's interpretation would essentially create a self-activating provision that would automatically reduce his alimony obligation without considering the parties' needs and circumstances. Husband's argument concerning his retirement benefits is likewise unconvincing. As we have stated before, having to use separate property to pay alimony does not foreclose a party's obligation to pay alimony. *See Jensen v. Jensen*, 2007 UT App 377, ¶¶ 8–10, 173 P.3d 223.

---

3. It was suggested at oral argument by the author of this opinion that this characterization gave Husband the benefit of deducting the "alimony" payments on his federal income tax return and also created the possibility that the payment obligation might end if Wife remarried. To these observations, counsel for Husband responded, "[Y]ou're overthinking it."

¶11    This is clearly a situation where more care in drafting the stipulated decree would have obviated the present dispute. And as indicated, it would have been an appropriate case for the district court to have conducted an evidentiary hearing, received extrinsic evidence, and issued findings of fact regarding the intentions of the parties. On appeal, we would likely have been persuaded by the argument that the district court erroneously interpreted an ambiguous document as though it were unambiguous and could be interpreted as a matter of law—had that objection been preserved below and briefed on appeal. We may even have been receptive to an argument that such an interpretative approach constituted plain error and could be reviewed even absent the claim's preservation below. *See, e.g., State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (providing that the preservation rule applies to every claim unless a party can demonstrate that plain error occurred). But Husband has not raised this argument on appeal, and as we have consistently stated, we will not consider plain error sua sponte. *See, e.g., State v. Blubaugh*, 904 P.2d 688, 700–01 (Utah Ct. App. 1995).

¶12    The district court decided the issue as it was presented by the parties. Husband has not demonstrated that, in doing so, the district court erred as a matter of law.

¶13    Affirmed.[4]

––––––––––

4. Wife seeks an award of attorney fees incurred on appeal. "Ordinarily, we award appellate attorney fees and costs when a party was awarded fees and costs below and then prevails on appeal." *Tobler v. Tobler*, 2014 UT App 239, ¶ 48, 337 P.3d 296. Because the district court expressly declined to award Wife attorney fees below, and because she has not persuaded us that an exception to this general rule is merited, we likewise deny her request for fees.