2023 UT App 38

## THE UTAH COURT OF APPEALS

STASHIA NELSON,
Appellee,
*v.*
ISAAC SCOTT NELSON,
Appellant.

Opinion
No. 20210345-CA
Filed April 13, 2023

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 154100713

Sara Pfrommer, Ronald D. Wilkinson, and Nathan S.
Shill, Attorneys for Appellant

Jacob A. Watterson and James C. Jenkins, Attorneys
for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

LUTHY, Judge:

¶1    This case raises issues regarding the claim preclusion branch of the doctrine of res judicata in the context of divorce proceedings. Two years after Stashia and Isaac Nelson divorced, their circumstances had changed enough that Isaac[1] asked the district court to modify their divorce decree to give him shared physical custody of their children and to lower his monthly child support obligation. Isaac was behind in his support payments, and in response to his petition, Stashia asserted that Isaac's

---

1. As is our practice, because the parties share the same last name, we use their first names, with no disrespect intended by the apparent informality.

"claims [were] barred, in whole or in part, because of [his] unclean hands in not being current in his child support obligation."

¶2 The parties engaged in mediation and were able to agree on a new custody and parent-time arrangement and on a reduced monthly child support obligation for Isaac going forward. They presented their agreement to the court, and it entered a modified divorce decree that incorporated the terms of the agreement.

¶3 Stashia then initiated a separate proceeding to collect the child support that Isaac had failed to pay under the original decree. Isaac argued that all child-related financial matters, including his child support arrears, had been resolved in the proceeding to modify the divorce decree and that Stashia was therefore barred under the claim preclusion branch of the doctrine of res judicata from collecting the unpaid support. The court disagreed and ordered Isaac to pay past-due support. In response, Isaac filed a certificate of readiness for trial on an issue that he had not raised previously, namely, whether the reduction in his monthly support obligation should be backdated to when he filed his petition to modify the divorce decree. The district court ruled that there were no issues to certify for trial and entered judgment against Isaac for unpaid support in the amount of $2,835.40 plus interest. Isaac appeals.

¶4 We see no error in the conclusion that claim preclusion does not bar Stashia's claim for unpaid child support. We also see no error in the district court's ruling that there were no issues to certify for trial. We therefore affirm.

BACKGROUND

*The Parties' Marriage and Divorce*

¶5 Isaac and Stashia married in 2007 and together had two children. Stashia later initiated divorce proceedings, during

which the parties reached an agreement that was incorporated into a divorce decree in March 2016.

¶6    The divorce decree provided for the parties' joint legal custody of the children, while giving Stashia sole physical custody and Isaac parent-time. The decree also ordered Isaac to pay $768 per month in child support, based on Stashia having sole physical custody of the children and on her lack of employment at the time.

*Isaac's Petition to Modify the Divorce Decree*

¶7    In June 2018, Isaac petitioned to modify the divorce decree, based on "substantial and material changes in the circumstances of the parties." In support of modifying the decree's custody order, Isaac alleged that he had a more "stable residence" and "flexible work schedule" than when the parties divorced; that he was also more able to "provide additional familial support" because he had recently remarried; and that Stashia, on the other hand, had violated several of the custody and parent-time provisions in the divorce decree. Based on these allegations, Isaac requested "increased parent time" and "joint physical custody."

¶8    In support of modifying the decree's child support order, Isaac alleged that Stashia had become employed full time and that her increased income, along with the parties' joint physical custody of the children, if the court awarded it, merited a reduction in his child support obligation.

¶9    In her answer to Isaac's petition, Stashia alleged, among other things, that Isaac was "not current in his child support obligation." She then asserted, as one of several affirmative defenses, that Isaac's "claims [were] barred, in whole or in part, because of [his] unclean hands in not being current in his child support obligation."

¶10   During discovery, the parties exchanged financial declarations outlining their incomes, assets, and expenses, but

neither party produced documents or information regarding Isaac's past child support payments or alleged arrears.

¶11 In October 2018, the parties participated in mediation and stipulated to a temporary modification of the divorce decree. The stipulation, the terms of which were incorporated into an order, contained temporary parent-time provisions and an agreement to participate in a custody evaluation. It did not mention or modify child support, and it concluded by saying: "All issues not specifically addressed herein that have been raised or could have been raised by the parties are, hereby, reserved."

¶12 After the agreed-upon custody evaluation was completed, the parties again participated in mediation, in May 2019. Later the same day, the district court commissioner held a settlement conference at which the parties orally presented stipulated terms to be incorporated into an amended divorce decree.

¶13 As to custody, the parties' attorneys told the commissioner that the parties had agreed to "a joint legal, joint physical custody arrangement," and the attorneys then explained the details of that arrangement. As to child support, they said that the parties had agreed that "[c]hild support would be 600 per month effective June 1st, 2019." The attorneys then said that the parties had agreed that "all prior orders that are not specifically modified here . . . would remain in full force and effect."

¶14 Toward the end of the settlement conference, the commissioner asked Isaac and Stashia if they were "willing to accept those terms as a final resolution of the issues that [were] currently pending in [the] matter." Each responded, "Yes."

¶15 In October 2019, the court issued an amended divorce decree incorporating the terms the parties had orally agreed to during the settlement conference. The amended decree sets forth the parties' custody arrangement; contains provisions regarding parent-time; restates the parties' parenting plan; provides that Isaac's "child support obligation shall be modified to $600.00 per

month effective June 1, 2019"; contains provisions regarding claiming the minor children for tax purposes; and states the parties' responsibilities regarding medical and childcare expenses. It then provides: "This order shall be a consolidated order on custody, parent-time, and child related financial matters."

*Stashia's Motion for an Order to Show Cause*

¶16  In February 2020, Stashia filed a motion for an order to show cause,[2] alleging that Isaac owed child support arrears that had accrued between September 2016 and February 2020.

¶17  Isaac opposed Stashia's request for unpaid child support. He noted that in response to his petition to modify the original divorce decree, Stashia "had raised the issue that [Isaac] had child support arrearage." He pointed to the parties' statements during the May 2019 settlement conference that they were willing to accept the terms outlined at that conference "as a final resolution of the issues that [were] currently pending in [the] matter." (Emphasis omitted.) And he pointed to the language of the amended decree that says that the amended decree is "a consolidated order on custody, parent-time, and child related financial matters." The district

---

2. The "motion to enforce order" procedure outlined in rule 7B of the Utah Rules of Civil Procedure has now "replace[d] and supersede[d] the prior order to show cause procedure" in the context of "domestic relations actions, including divorce." Utah R. Civ. P. 7B(a), (i), (j). A similar "motion to enforce order" procedure outlined in rule 7A now applies in the context of other civil proceedings. *See id.* R. 7A. In recommending rule 7B, the Utah Supreme Court's Advisory Committee on the Rules of Civil Procedure left untouched rule 101(k), which addresses motion practice before district court commissioners and still recites requirements for "[a]n application to the court for an order to show cause." *Id.* R. 101(k). The committee may wish to revise rule 101(k) to conform rule 101(k)'s provisions to those of rule 7B.

court commissioner "reviewed the pleadings on file and . . . considered the evidence and arguments presented" and disagreed with Isaac, finding that "[Stashia] did not waive [Isaac's] child support arrears at the [May 2019] mediation between the parties or by stipulating to the Amended Decree of Divorce."

¶18    Isaac objected to the commissioner's recommendation. He argued that, based on "the principles of the 'claim preclusion' prong of the doctrine of *res judicata*," the modification proceedings and amended divorce decree had "a preclusive effect" on a claim for child support arrears that accrued before entry of the amended decree. The district court overruled Isaac's objection and entered judgment against Isaac for child support arrears "in an amount to be determined . . . based on the accountings submitted by the Parties." After the parties submitted their accountings, the court found that Isaac's child support arrears totaled $2,835.40.[3]

*Isaac's Certificate of Readiness for Trial*

¶19    Isaac then filed, in March 2021, a certificate of readiness for trial, in which he asserted: "This case is ready for trial on the reserved issue of [whether] the June 1, 2019 child support adjustment should be backdated to the date of the filing of the Petition to Modify (June 2018)." Isaac had not previously asked the court to backdate the modified child support order to June 2018.

¶20    The district court ruled that "[t]here [were] no issues to certify for trial" and entered judgment against Isaac in the amount of $2,835.40 plus interest. Isaac now appeals.

---

3. Our resolution of this appeal makes determining the portion of this amount that accrued before entry of the amended divorce decree unnecessary.

ISSUES AND STANDARDS OF REVIEW

¶21    Isaac asks us to reverse the district court's judgment against him for unpaid child support. He contends that Stashia's claim for unpaid child support is barred by the claim preclusion branch of res judicata.[4] Ultimately, "[w]hether a claim is barred by res judicata is a question of law that we review for correctness." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622.

¶22    Part of our claim preclusion analysis in this case, however, requires a determination of the intended scope of ambiguous language in the stipulated amended divorce decree. Where the language of a written stipulation is ambiguous, "the trial court

_____

4. Isaac does not always frame his argument in terms of "claim preclusion" or "res judicata." In one section of his principal brief, he asserts that the claim for unpaid child support was "resolved" by the amended divorce decree. In another, he argues that "the issues to which the parties have stipulated [have] become 'settled' and 'not reserved for future consideration.'" And at one point he does explicitly invoke "the 'claim preclusion' prong of the doctrine of res judicata." Regardless of their phrasing, each of these arguments is, in substance, an argument for application of the doctrine of res judicata. *See infra* ¶¶ 26-28; *Mel Trimble Real Estate v. Monte Vista Ranch, Inc.*, 758 P.2d 451, 453 (Utah Ct. App.) (explaining that res judicata "bars the relitigation . . . of a claim for relief previously *resolved*" (emphasis added)), *cert. denied*, 769 P.2d 819 (Utah 1988); *Res judicata*, Black's Law Dictionary (abridged 6th ed. 1991) (defining res judicata as "a thing or matter *settled* by judgment" (emphasis added)).
       Because Isaac never uses the terms "issue preclusion" or "collateral estoppel" and never cites a case applying that branch of res judicata, and because he did not do so in the district court, we address only the claim preclusion branch of res judicata. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("Issues that are not raised at trial are usually deemed waived."); *State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (declining to address an inadequately briefed issue).

ordinarily considers extrinsic evidence in an effort to resolve the ambiguit[y] and will make findings of fact to resolve any disputed evidence." *Christensen v. Christensen*, 2018 UT App 53, ¶ 6, 420 P.3d 106 (footnote omitted). When a court looks outside the four corners of a written stipulation to determine its intended scope, that determination presents a question of fact, "which we review for clear error." *Fuller v. Bohne*, 2017 UT App 28, ¶ 9, 392 P.3d 898, *cert. denied*, 398 P.3d 51 (Utah 2017).

¶23    Isaac also asks us to reverse the district court's ruling, in response to his filing of a certificate of readiness for trial, that "[t]here [were] no issues to certify for trial." The legal effect of a certificate of readiness for trial is a question of law, and "[w]e review questions of law for correctness, giving no deference to the ruling of the court below," *see Madsen v. Washington Mutual Bank FSB*, 2008 UT 69, ¶ 19, 199 P.3d 898.

ANALYSIS

I. Stashia's Claim for Unpaid Child Support
Is Not Barred by Res Judicata.

¶24    Isaac contends that the district court erred in allowing Stashia to bring a claim for unpaid child support. As we have noted, the substance of his argument is that Stashia's claim for unpaid support is barred by the claim preclusion branch of res judicata. *See supra* note 3. This court has previously observed that, indeed, "[t]he principles of res judicata apply fully in the context of divorce proceedings." *Krambule v. Krambule*, 1999 UT App 357, ¶ 13, 994 P.2d 210 (citing *Jacobsen v. Jacobsen*, 703 P.2d 303, 305 (Utah 1985)), *cert. denied*, 4 P.3d 1289 (Utah 2000). But this observation merits explanation.

¶25    Both res judicata and the law of the case doctrine can operate to give an earlier decision on a particular claim or issue preclusive effect when the same claim or issue is raised again. *See Utah State Bar v. Rasmussen* (*In re Discipline of Rasmussen*), 2013 UT

14, ¶¶ 17–18, 299 P.3d 1050. A key difference between the two doctrines, however, is that generally "[r]es judicata applies as between multiple cases while the law of the case doctrine applies to successive proceedings within one case." *State v. Waterfield*, 2014 UT App 67, ¶ 39 n.12, 322 P.3d 1194, *cert. denied*, 333 P.3d 365 (Utah 2014).

¶26 This distinction could suggest that in a single divorce case—over which a district court has continuing jurisdiction to enter orders modifying the original decree, *see* Utah Code § 30-3-5(5)—only the law of the case doctrine would ever apply. To the contrary, however, we have held that res judicata applies as between "[original] divorce actions and subsequent modification proceedings." *Smith v. Smith*, 793 P.2d 407, 410 (Utah Ct. App. 1990). Accordingly, in *Krambule v. Krambule*, 1999 UT App 357, 994 P.2d 210, *cert. denied*, 4 P.3d 1289 (Utah 2000), we concluded that a petition to modify a divorce decree to require an ex-husband to pay support for a child conceived through artificial insemination without the ex-husband's knowledge was "barred under the principles of res judicata" since that claim "could and should have been asserted in the original divorce action." *Id.* ¶ 16. And in *Throckmorton v. Throckmorton*, 767 P.2d 121 (Utah Ct. App. 1988), we upheld on res judicata grounds the denial of a petition to modify a divorce decree to give an ex-wife an interest in her ex-husband's retirement benefits, which had not been included in the original decree. *See id.* at 123.

¶27 In other words, we treat an original divorce proceeding and each subsequent proceeding to *modify* the divorce decree as separate "cases" for res judicata purposes. At the same time, we treat a divorce proceeding leading to a decree or an amended decree and any subsequent proceeding to *enforce* that decree or amended decree as successive proceedings within the same case. Thus, in this second context, we apply the law of the case doctrine. *See Robinson v. Robinson*, 2016 UT App 32, ¶¶ 26–29, 368 P.3d 147 (holding, in a proceeding to enforce a stipulated divorce decree, that law of the case barred a husband from

relitigating a factual issue decided previously), *cert. denied*, 379 P.3d 1185 (Utah 2016).[5]

¶28   This appeal is somewhat unusual in that the "first case" for purposes of res judicata is the modification proceeding and the "second case" is the order to show cause proceeding to enforce the child support order from the original decree. But because the order to show cause proceeding is based on the original decree, it is a separate "case" from the modification proceeding that resulted in the amended decree. We therefore apply the principles

---

5. Application of res judicata in the divorce context might be seen as "distinguish[able]" from its application in other contexts in another way as well. *See Smith v. Smith*, 793 P.2d 407, 410 (Utah Ct. App. 1990). That is because in the divorce context the preclusive effect of res judicata can be avoided based on "the equitable doctrine that allows courts to reopen [prior] determinations if the moving party can demonstrate a substantial change of circumstances." *Id.* In fact, some prior determinations in divorce cases may be reopened on a showing of a material change of circumstances that is less than substantial. *See, e.g., Miller v. Miller*, 2020 UT App 171, ¶ 18, 480 P.3d 341 (observing that "when modifying parent-time (as opposed to custody), the petitioner is required to make only *some* showing of a change in circumstances, which does not rise to the same level as the substantial and material showing required when a district court alters custody" (cleaned up)). Though this might be seen as a distinguishing feature of res judicata in the divorce setting, it is consistent with our statement that "[t]he principles of res judicata apply fully in the context of divorce proceedings," *Krambule v. Krambule*, 1999 UT App 357, ¶ 13, 994 P.2d 210, *cert. denied*, 4 P.3d 1289 (Utah 2000), because a decision based on a changed set of material facts is not a decision on the same question as the one presented previously.

of res judicata as we analyze the potential preclusive effect of the amended decree in the order to show cause proceeding.[6]

¶29   "The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion." *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214. "[C]laim preclusion corresponds to causes of action[;] issue preclusion corresponds to the facts and issues underlying causes of action." *Oman v. Davis School Dist.*, 2008 UT 70, ¶ 31, 194 P.3d 956.

¶30   "Claim preclusion . . . is premised on the principle that a controversy should be adjudicated only once." *Pioneer Home Owners Ass'n v. TaxHawk Inc.*, 2019 UT App 213, ¶ 41, 457 P.3d 393 (cleaned up), *cert. denied*, 466 P.3d 1073 (Utah 2020). It "bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." *Hansen v. Bank of N.Y. Mellon*, 2013 UT App 132, ¶ 5, 303 P.3d 1025 (cleaned up). "Whether a claim is precluded from relitigation depends on a three-part test." *Mack v. Utah State Dep't of Com.*, 2009 UT 47, ¶ 29, 221 P.3d 194.

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Id.* (cleaned up).

---

6. We are not alone in this approach. *See, e.g., In re Marriage of Potts*, 542 N.E.2d 179, 180–82 (Ill. App. Ct. 1989) (applying res judicata principles to hold that, under the facts of the case, an amended divorce decree that modified a child support obligation did not bar a claim for child support arrears that accrued under the prior decree); *Zickefoose v. Muntean*, 399 N.W.2d 178, 180–81 (Minn. Ct. App. 1987) (same).

¶31 Here, it is undisputed that Stashia and Isaac were the parties to both the proceeding on Isaac's petition to modify the divorce decree—the "first case"—and the proceeding on Stashia's subsequent claim for unpaid child support under the original decree—the "second case." It is also undisputed that Isaac's petition to modify the divorce decree resulted in a final judgment on the merits, in the form of the amended divorce decree. Thus, we focus our analysis on the second requirement of the claim preclusion test: whether Stashia presented or was required to present her claim for unpaid child support during the proceeding on Isaac's petition to modify the decree.

A. Stashia did not present a claim for unpaid child support in the modification proceedings.

¶32 The second requirement of the claim preclusion test is satisfied if the claim at issue was presented in a prior action. *See Mack*, 2009 UT 47, ¶ 29. Isaac argues that Stashia's answer to his petition to modify the divorce decree presented a claim for unpaid child support. Specifically, he points to Stashia's allegation that Isaac was "not current in his child support obligation" and to her assertion, as an affirmative defense, that Isaac's "unclean hands in not being current in his child support obligation" should bar modification of his support obligation.[7]

¶33 However, while Stashia alleged that Isaac was in arrears in his child support payments, neither that allegation nor the affirmative defense based on that allegation presented a "claim." "An original claim, counterclaim, cross-claim or third-party claim must contain a short and plain: (1) statement of the claim showing that the party is entitled to relief; and (2) demand for judgment for specified relief." Utah R. Civ. P. 8(a). Stashia's answer to Isaac's

_____

7. "The doctrine of unclean hands expresses the principle that a party who comes into equity for relief must show that his conduct has been fair, equitable, and honest as to the particular controversy in issue." *Goggin v. Goggin*, 2013 UT 16, ¶ 60, 299 P.3d 1079 (cleaned up).

petition to modify the divorce decree did not allege how much Isaac owed in unpaid child support or make a demand for relief. We cannot, therefore, say that Stashia's affirmative defense presented a claim for res judicata purposes. *See Airfreight Express Ltd. v. Evergreen Air Center, Inc.*, 158 P.3d 232, 237 (Ariz. Ct. App. 2007) (holding that "affirmative defenses are not claims" for purposes of "[t]he doctrine of claim preclusion"); *cf. Norman A. Koglin Assocs. v. Valenz Oro, Inc.*, 680 N.E.2d 283, 288 (Ill. 1997) ("A counterclaim differs from an . . . affirmative defense. A counterclaim is used when seeking affirmative relief, while an . . . affirmative defense seeks to defeat a plaintiff's claim.").

¶34   This is consistent with our analysis in *Berkshires, LLC v. Sykes*, 2005 UT App 536, 127 P.3d 1243. In that case, the plaintiffs were poised to purchase and develop multiple parcels of land when the defendants recorded a document purporting to grant an easement that would significantly hinder the anticipated development. *Id.* ¶ 4. The plaintiffs sued "for slander of title and interference with economic relations, claiming that [the defendants] had intentionally fabricated the [e]asement [d]ocument." *Id.* ¶ 6. Late in the litigation, the defendants moved for partial summary judgment, asserting that as a matter of law under the undisputed evidence "Hope Lane, a road running [across the parcels at issue], was a public road." *Id.* ¶ 9. The trial court denied the motion on the ground that the defendants had not presented a claim for Hope Lane to be declared a public road because their "original answer merely stated that '[a]s a separate and affirmative defense, [the] [d]efendants . . . allege that Hope Lane is a public road,' without making any further affirmative claim for relief." *Id.* (first alteration and omission in original).

¶35   On appeal, the defendants argued that the trial court improperly refused to treat their Hope Lane affirmative defense as a counterclaim. *See id.* ¶¶ 16–17. We said that among the factors a court could consider when deciding whether to treat an affirmative defense as a counterclaim was "whether the defense as argued or articulated in the pleadings sufficiently states a claim for relief and a demand for judgment as required by rule 8(a) of

the Utah Rules of Civil Procedure." *Id.* ¶ 18. In concluding that the trial court had not abused its discretion by refusing to treat the Hope Lane affirmative defense as a counterclaim, we explained:

> At the heart of the matter here is whether Plaintiffs should have recognized that Defendants' statement "Hope Lane is a public road" was in reality a counterclaim, though labeled an affirmative defense. Here, the statement on its face is not readily identifiable as a counterclaim; it requests no relief and does not demand judgment. . . . Defendants did not properly plead a counterclaim . . . .

*Id.* ¶ 19. In sum, although it was in a different context, we have previously concluded that an affirmative defense that requests no relief and does not demand judgment does not present a claim. Our reaching the same conclusion here in the res judicata context "is not much of a jurisprudential leap." *Atkinson v. Stateline Hotel Casino & Resort*, 2001 UT App 63, ¶ 19 n.6, 21 P.3d 667.

B.  The district court's finding that the amended divorce decree did not preclude Stashia's claim for unpaid child support was not clearly erroneous.

¶36    Even if a party does not present a claim in her pleadings or otherwise during litigation, she might still agree to settle that unpled claim with the intent to foreclose its future litigation. If such an agreement becomes the basis of a stipulated decree, the second requirement of claim preclusion is met, and claim preclusion may apply to the settled but unpled claim. *See Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990) (holding, in the context of a "consent judgment," that "[i]f the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded"); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443 (3d ed. April 2022 update) ("[Following a consent judgment,] [i]f

it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented.").[8]

¶37    Isaac relies on this principle. He contends that the amended divorce decree, which was the product of a settlement agreement and stipulation, "expressly and unambiguously resolved" any claim for child support arrears that predated the amended decree. In support, he points to the provision of the amended decree that states: "This order shall be a consolidated order on custody, parent-time, and *child related financial matters*." (Emphasis added.) Isaac interprets the phrase "child related financial matters" to mean that the amended decree was an order resolving *all* child related financial matters, including his child support arrears. But this is not the only plausible reading of this provision.

¶38    The amended decree addresses several child-related financial matters explicitly: the modified child support award, income tax deductions related to the children, health insurance and medical expenses for the children, and childcare expenses. It never mentions child support arrears. Thus, the phrase "child related financial matters" can plausibly be read as encompassing only the child-related financial matters explicitly addressed in the amended decree. Because this provision of the amended decree supports two plausible readings, it is ambiguous. *See Moon v. Moon*, 1999 UT App 12, ¶ 19, 973 P.2d 431 ("Language in a written document is ambiguous if the words may be understood to support two or more plausible meanings." (cleaned up)), *cert. denied*, 982 P.2d 89 (Utah 1999).

¶39    "Ordinarily, we interpret a divorce decree as we would any other written instrument, construing it in accordance with its plain meaning and according no deference to the district court's interpretation." *Christensen v. Christensen*, 2018 UT App 53, ¶ 6,

---

8. "In Utah, . . . the rules of claim preclusion are 'virtually identical' to the federal rules . . . ." *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 9, 393 P.3d 285 (citation omitted).

420 P.3d 106. "But where, as here, the agreement is ambiguous, the trial court ordinarily considers extrinsic evidence in an effort to resolve the ambiguit[y] and will make findings of fact to resolve any disputed evidence . . . ." *Id.* (footnote omitted).

¶40 The district court here considered extrinsic evidence to determine whether Stashia's claim for unpaid child support was encompassed within the amended decree, and it made a factual finding that the claim for unpaid child support was not encompassed within the decree. Among the evidence considered were the oral representations the parties made during their May 2019 settlement conference and a declaration provided by Isaac, both of which Isaac directed the court to when he opposed Stashia's motion for an order to show cause. The district court considered this evidence and found that Stashia did not waive her claim for unpaid child support.

¶41 When, as here, a court looks outside the four corners of a stipulated judgment to determine its intended scope, that determination is a determination of fact, which we review for clear error. *See Noel v. James*, 2022 UT App 33, ¶ 11, 507 P.3d 832 ("The scope of a stipulation presents a question of fact, which we review for clear error." (cleaned up)); *Fuller v. Bohne*, 2017 UT App 28, ¶ 9, 392 P.3d 898 (same), *cert. denied*, 398 P.3d 51 (Utah 2017). And "[f]indings of fact are clearly erroneous only if no reasonable factfinder could review the evidence presented and arrive at the disputed finding." *Blackhawk Townhouses Owners Ass'n Inc. v. J.S.*, 2018 UT App 56, ¶ 23, 420 P.3d 128.

¶42 We see no clear error in the district court's finding that the parties' amended decree was not intended to be preclusive of Stashia's claim for child support arrears. Isaac's child support arrears were not mentioned at all during the May 2019 settlement conference. A reasonable factfinder might therefore believe it a stretch to assume that when Stashia and Isaac told the commissioner they were "willing to accept [the] terms [that had been outlined in the settlement conference] as a final resolution of the issues that [were] currently pending in [the] matter," they

would have thought that those issues included Isaac's alleged child support arrears.

¶43 Moreover, after the parties said that the modified child support obligation would become effective June 1, 2019, they told the commissioner that "all prior orders that are not specifically modified [as outlined in the settlement conference] . . . would remain in full force and effect." A reasonable view of this evidence is that when the parties accepted the terms of the stipulation "as a final resolution of the issues that [were] currently pending in this matter," *these* were the terms that they intended to accept: that the child support order prior to June 1, 2019, as well as any outstanding obligations under it, "would remain in full force and effect."

C. Stashia was not required to present her claim for unpaid child support in the modification proceeding.

¶44 Even if a claim was not presented or settled in an initial action, the second requirement of the claim preclusion test can be met by showing that the subsequently raised claim "could and should have been raised in the first action." *Mack v. Utah State Dep't of Com.*, 2009 UT 47, ¶ 29, 221 P.3d 194 (cleaned up). A subsequent claim could and should have been brought in an earlier action "if [both claims] arise from the same operative facts, or in other words from the same transaction." *Id.* ¶ 30. To determine if two claims arise from the same transaction, a court may consider "whether the facts [of each] are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 14, 284 P.3d 622 (cleaned up). But "no single factor is determinative." *Id.* (cleaned up). "Therefore, every consideration need not be addressed or considered in every case." *Id.*

¶45 Here, Isaac's claims for modification of the divorce decree were not related in origin to Stashia's later claim for unpaid child support. Isaac's claims to modify the divorce decree originated

from alleged changes to his work and home life since the entry of the original decree (including his recent remarriage), alleged violations by Stashia of the divorce decree's custody and parent-time provisions, and Stashia's recent full-time employment. In contrast, Stashia's claim for unpaid child support originated from Isaac's alleged failure to abide by the divorce decree's child support order. These differing origins suggest that the parties' respective claims do not arise from the same transaction. *See In re Marriage of Potts*, 542 N.E.2d 179, 181–82 (Ill. App. Ct. 1989) (observing that "[t]here [was] no significant evidentiary overlap" between a father's claim for unpaid child support and the mother's claim for modification of the support obligation and, thus, holding that res judicata did not bar the father's separate action for unpaid support); *Zickefoose v. Muntean*, 399 N.W.2d 178, 180–81 (Minn. Ct. App. 1987) (concluding that a stipulation to amend a divorce decree to reduce the father's child support obligation was "a totally different and distinct action" from the mother's later "motion to compel payment of child support arrearages" and, thus, that res judicata did not bar the mother's later action for arrearages).

¶46 Additionally, neither Isaac nor Stashia conducted discovery related to Isaac's alleged child support arrears during the modification proceeding, which suggests that it was not their expectation that Isaac's claims for modification of the original decree and Stashia's claim for unpaid child support under the original decree would be treated as a single trial unit.

¶47 Moreover, Utah Code section 78B-12-210(9)(a) provides for the filing of a petition to modify a child support order based on a substantial change of circumstances, while our rules require a motion—previously a motion "for an order to show cause," *see* Utah R. Civ. P. 7(q) (2020), and now "a motion to enforce order," *see* Utah R. Civ. P. 7B—to recover unpaid child support. By providing different procedures for modifying a child support order and enforcing a child support order, our code and rules also implicitly recognize that these two types of actions generally do not arise from the same transaction. *Cf. In re P.D.D.*, 256 S.W.3d

834, 842, 844 (Tex. App. 2008) (reasoning in part that because the Texas Family Code "does not require their joinder," actions for "delinquent child support" and actions for "modification of . . . future child support obligations" are "separate and definable questions" and the one is not barred by the other under a "transactional approach" to res judicata).

¶48    The differing origins of Isaac's and Stashia's respective claims, the apparent expectations of the parties, and the procedural scheme set forth in our code and rules demonstrate that Isaac's claim for modification of the original child support order and Stashia's claim for enforcement of the original order did not arise from the same transaction. Thus, Stashia was not required to present her claim for unpaid child support during the proceeding on Isaac's petition to modify the divorce decree.

¶49    Because Stashia neither presented nor settled her claim for unpaid child support during the proceeding on Isaac's petition to modify the divorce decree, and because she was not required to present her claim for unpaid child support during that proceeding, the doctrine of claim preclusion does not apply to bar Stashia's claim.[9]

---

9. The district court expressed its ruling against Isaac's claim preclusion argument by finding that Stashia "did not waive" her claim for unpaid child support. Our ruling is that Stashia neither waived nor forfeited her right to assert that claim. "Though principles of waiver and forfeiture are often used interchangeably, the two concepts are technically distinct." *Reller v. Argenziano*, 2015 UT App 241, ¶ 30, 360 P.3d 768 (cleaned up). "Forfeiture is the failure to make the timely assertion of a right, whereas waiver is the intentional relinquishment or abandonment of a known right." *Id.* (cleaned up). Stashia did not waive her known right to bring a claim for unpaid support since, as we have concluded, she did not intentionally relinquish it through settlement or otherwise. Nor did she forfeit that right by

(continued…)

## II. The District Court Did Not Err by Concluding that There Were No Issues to Certify for Trial.

¶50    Isaac also argues that "[t]he district court erred when it refused to allow [him] to counter Stashia's Order to Show Cause with his request to retroactively apply the child support modification." His request to retroactively apply the child support modification took the form of a certificate of readiness for trial filed nearly a year and a half after the modification proceeding to which it related had concluded. Because the modification proceeding had concluded, and because Isaac filed no rule 59 or 60(b) motion to alter or relieve him from the resulting judgment—i.e., the amended divorce decree, with its June 1, 2019 effective date for the modified support order—Isaac's certificate of readiness for trial landed in a legal vacuum and had no legal effect.[10] With no pending proceeding to which the issue of

---

failing to timely assert it since, as we have concluded, she was not required to present her claim during the modification proceeding. *See id.* ¶ 31 (holding that failure to timely amend a complaint to assert a claim for retroactive child support amounted to a forfeiture). We leave for another day the question of whether or how a claim for unpaid child support may be settled without running afoul of the statutory limitation on the waiver of child support claims. *See generally* Utah Code § 78B-12-109(1) ("Waiver and estoppel [of child support] shall apply only to the custodial parent when there is no order already established by a tribunal if the custodial parent freely and voluntarily waives support specifically and in writing."); *Cahoon v. Evans*, 2011 UT App 148, ¶ 3, 257 P.3d 454 (holding that Utah Code section 78B-12-109 "rules out waiver and estoppel in all instances where there is a child support order already in place").

10. Isaac makes no attempt to address this procedural reality. Instead, he uses the certificate of readiness for trial as a vehicle to argue that he stipulated to a June 1, 2019 effective date for the modified child support order only "[i]n exchange" for Stashia

(continued…)

retroactive application of the modified support order applied, the district court was correct to conclude that "[t]here [were] no issues to certify for trial."

CONCLUSION

¶51   Stashia did not present an affirmative claim for child support arrears during the modification proceeding. The district court did not clearly err in finding that Stashia's claim for those arrears was not encompassed within the modified divorce decree. And Stashia's claim for those arrears did not arise out of the same transaction as the claims Isaac made in his petition to modify the decree. Accordingly, Stashia's claim for unpaid child support is not barred by res judicata. Additionally, the district court's ruling in response to Isaac's certificate of readiness for trial—that there were no issues to certify for trial—was not in error.

¶52   Affirmed.

------------

giving up the right to pursue her claim for child support arrears. But the district court found that the parties did not intend such an exchange, and we have affirmed that finding. See supra ¶¶ 36–43.